ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| | | |
|---|---|---|
| SUCESIÓN DE: EDGARDO LUIS MARRERO MARTÍNEZ compuesta por: Edgard Omar Marrero Ortiz, Derrick Edgardo Marrero Ortiz y Kevin Edgardo Marrero Ortiz<br><br>Apelados<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE HUMACAO<br><br>Apelante | KLAN202300520 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de Humacao<br><br>Civil Núm. HU2018CV00154<br><br>Sobre: DISCRIMEN POR IDEOLOGÍA POLÍTICA Y SEXO; REPRESALIAS EN EL EMPLEO |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de octubre de 2024.

Comparece el Municipio Autónomo de Humacao, (en adelante, parte apelante o Municipio), para solicitarnos que se revise y revoque la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, TPI) el 26 de abril de 2023 y notificada el 5 de mayo del mismo año, en la cual se declaró *Ha Lugar* la demanda presentada por el señor Edgardo Luis Marrero Martínez (en adelante "parte apelada" o "señor Marrero Martínez" y declarando con lugar la acción de discrimen por razón de ideas y filiación política y la acción de represalias en el empleo.[2] El señor Marrero Martínez incluyó en su demanda una causa de acción por discrimen de género. Sin embargo, el TPI declaró *Sin Lugar* la acción de genero al amparo de la Ley Núm. 69-1985.

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución del Juez Fernando L. Rodríguez Flores.
[2] Anejo 2 del Apéndice del Recurso de Apelación, págs. 2-38.

La parte apelada compareció mediante *Alegato del Apelado*. Posteriormente, el 25 de junio de 2024, el representante legal de la parte apelada notificó a este Tribunal el deceso del señor Marrero Martínez. El 8 de julio de 2024, emitimos una *Resolución* solicitando el certificado de defunción del señor Marrero Martínez, el estado de la Declaratoria de Herederos y concediéndole término hasta el 18 de julio para presentar el mismo. El 16 de julio de 2024, el representante legal del señor Martínez Marrero presentó *Moción en Cumplimiento de Orden* acreditando lo solicitado.

Posteriormente, el 31 de julio de 2024, el representante legal solicitó que se sustituyera al señor Marrero Martínez en el pleito de epígrafe, por la sucesión compuesta por sus hijos Edgard Omar, Derrick Edgardo y Kevin Edgardo todos de apellido Marrero Ortiz. Atendida la solicitud de la sucesión del señor Marrero Martínez, el 21 de agosto de 2024 le ordenamos a la parte a informar si el Licenciado Carlos Mondríguez Torres continuaría representando a la sucesión en el pleito de marras. El 27 de agosto de 2024, el representante legal informó mediante *Moción en Cumplimiento de Orden* que continuaría ostentando la representación legal de la Sucesión Marrero Martínez en el recurso de epígrafe. Mediante *Resolución* emitida el 28 de agosto de 2024, se ordenó la correspondiente sustitución de partes. Cumplida nuestra orden, procedemos a examinar la solicitud de autos, la totalidad del expediente y la transcripción estipulada por las partes, *confirmamos* la *Sentencia* apelada por los fundamentos que expondremos a continuación.

**-I-**

El señor Marrero Martínez comenzó a trabajar en el municipio de Humacao desde el 3 de julio de 2007, donde ocupó el puesto de Recaudador Auxiliar. En dicho cargo se mantuvo hasta el 7 de julio de 2009, en nombramientos transitorios, que se extendían cada seis

(6) meses.[3] La parte apelada se identificaba y era simpatizante del Partido Nuevo Progresista, lo cual era de conocimiento general en el Municipio.[4] Posteriormente, ante la necesidad de cubrir una vacante surgida en un puesto de "Pre Interventor I", el señor Marrero Martínez solicitó la plaza, la cual ejerció desde el 8 de julio de 2009 hasta el 30 de abril de 2017.[5] Los requisitos de la plaza de Pre Interventor I al momento de la solicitud eran los siguientes: "graduación de Escuela Superior acreditada que incluya **_o_** esté suplementada por un curso de teneduría de libros o tres (3) créditos a nivel universitario de una entidad educativa acreditada. Se requieren dos (2) años de experiencia en trabajos de finanzas o contabilidad".[6]

El señor Marrero Martínez contaba con un Bachillerato en Ciencias Sociales de una universidad acreditada y dos (2) años de experiencia en su puesto anterior como Recaudador Auxiliar. Mediante una misiva cursada el 3 de noviembre de 2010, la parte apelada solicitó al alcalde del municipio de Humacao, Marcelo Trujillo (en adelante, Alcalde), a la Directora de Recursos Humanos, la licenciada Rose V. Nieves (en adelante, Directora de Recursos Humanos) y al señor Carrasquillo Jiménez, supervisor, el ser considerado para la permanencia al puesto de Pre Interventor I que

---

[3] Anejo 21 del Recurso de Apelación, pág. 236.

[4] Anejo 21 del Recurso de Apelación, pág. 392-394. Deposición del señor Marrero Martínez, fecha 6 de septiembre de 2019, pág. 92 líneas 2-24, pág. 93, líneas 1-25, pág. 94, líneas 1-24, pág. 95 líneas 1-24. Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señor Edgardo Marrero Martínez, pág. 17, líneas 1-14.

[5] Anejo 4 del Recurso de Apelación, pág. 175. Anejo 35 del Recurso de Apelación págs. 735-737. El señor Marrero Martínez contó con extensiones de nombramientos como empleado transitorio por "necesidades del servicio" entre las fechas comprendidas: desde el 27 de mayo de 2011 hasta el 31 de diciembre de 2011; 1 de diciembre de 2011 hasta el 30 de junio de 2012; 1 de enero de 2013 hasta el 30 de junio de 2013; desde el 1 de junio hasta el 31 de diciembre de 2013; del 30 de diciembre de 2013 hasta el 30 de junio de 2014; desde el 22 de diciembre de 2014 hasta el 30 de junio de 2015; desde el 2 de junio de 2015 hasta el 31 de diciembre de 2015; desde el 1 de diciembre de 2015 hasta el 30 de junio de 2016 y desde el 1 de junio de 2016 hasta el 15 de febrero de 2017, que se extendió le hasta el 30 de abril de 2017.

[6] Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señor Edgardo Marrero Martínez, pág. 33, líneas 10-26; Anejo 35 del Recurso de Apelación, págs. 735-737.

ocupaba desde el 8 de julio de 2009.[7] Ninguna de estas personas le notificó si cumplía o no con los requisitos del puesto. El señor Marrero Martínez solicitó por escrito en dos ocasiones que se le considerara para la posición de manera permanente, con resultados infructuosos, pues ni siquiera se le contestaba su petición. Durante todo ese tiempo, estuvo recibiendo su sueldo como Recaudador Auxiliar, el cual era significativamente menor al de la plaza que ocupaba, es decir de Pre Interventor I.[8]

Ante la inercia relacionada a su nombramiento, el 25 de enero de 2011 el señor Marrero Martínez cursó nuevamente una misiva dirigida al Alcalde, a la Directora de Recursos Humanos y al señor Carrasquillo Jiménez solicitando la reclasificación de puesto, nombramiento en propiedad y ajuste salarial.[9] A estos fines, la Directora de Recursos Humanos le solicitó a la señora Maribel Castro Cosme, una subalterna del Departamento, que trabajara con la solicitud de Reclasificación a Oficial Pre Interventor I del señor Marrero Martínez.[10] No obstante, la señora Castro Cosme decidió no tomar acción sobre el nombramiento de la parte apelada, toda vez que, a su juicio, el señor Marrero Martínez no cumplía con los requisitos del puesto.[11] La señora Castro Cosme optó por no llevar a cabo el trámite de la reclasificación, sin notificarle al empleado, a la Directora de Recursos Humanos ni al Alcalde su determinación.[12]

Ante la ausencia de respuesta, el 29 de noviembre de 2011 el señor Marrero Martínez volvió a inquirir acción sobre su situación laboral.[13] Según surge del expediente de autos, el Alcalde solicitó al

---

[7] Anejo 21 del Recurso de Apelación, pág. 223.
[8] Anejo 21 del Recurso de Apelación, pág. 218.
[9] *Íd.,* pág. 224.
[10] *Íd.,* pág. 232.
[11] Anejo 35 del Recurso de Apelación, pág. 800.
[12] Transcripción Prueba Oral Estipulada, 10 de abril de 2023, Testigo Maribel Castro Cosme, pág. 347, líneas 11-22; pág. 432, líneas 7-25, pág. 434, líneas 1-7. Además, surgió de la Transcripción del Juicio en su Fondo que, donde la señora Castro Cosme verbalizó que no tenía obligación alguna de notificarle sobre la falta de requisitos a nadie, puesto que esto era responsabilidad de la Directora de Recursos Humanos y no de ella.
[13] Anejo 35 del Recurso de Apelación, pág. 787.

Departamento de Recursos Humanos nuevamente que se tomara acción con el nombramiento de la parte apelada.[14] No obstante, sus reclamos aun con las órdenes del Alcalde no fueron ejecutadas. Es menester destacar que, el señor Marrero Martínez nunca fue amonestado, ni sufrió señalamiento por deficiencias laborales por parte de sus superiores. Además, se desprende del expediente de marras que, durante el período de entre 1 de enero de 2011 al 31 de diciembre de 2014, el señor Marrero Martínez participó y dio testimonio en una auditoría conducida por la Oficina de la Contralor de Puerto Rico. Parte de esta auditoría versó sobre su nombramiento, sueldo, funciones y el tiempo que llevaba ocupando el puesto de Pre Interventor I, manera transitoria.[15]

El 26 de octubre de 2016, por primera vez la Directora de Recursos Humanos le informó al señor Marrero Martínez que este necesitaba cursar tres (3) créditos en contabilidad como requisito de nombramiento de su plaza de Pre Interventor I.[16] La minuta fue incluida ulteriormente en el expediente del empleado, sin contar con su firma.[17] No obstante, ante tal requerimiento, el señor Marrero Martínez se matriculó en una institución para cursar los créditos solicitados, que comenzarían el 1 de mayo de 2017.

Posteriormente, para el 16 de noviembre de 2016, la parte apelada solicitó una licencia médico familiar hasta el 15 de febrero de 2017. **La Directora de Recursos Humanos le solicitó que entrenara a la señora Yaritza Sánchez Cruz, quien ocupaba un puesto de oficinista, para que realizara sus funciones durante**

---

[14] Anejo 35 del Recurso de Apelación, pág. 794.

[15] Anejo 21 del Recurso de Apelación, págs. 533-535.

[16] *Íd.*, pág. 170.

[17] Transcripción Prueba Oral Estipulada, 10 de abril de 2023, Testigo Maribel Castro Cosme, pág. 372, líneas 10-20; pág. 373, líneas 15-25, pág. 374, líneas 1-26, pág. 375, líneas 1-9. Surge además de la Transcripción Oral Estipulada, cuando el Lcdo. Mondríguez Torres argumentó mediante la objeción presentada: "Tú no estabas, ¿verdad? Yo creo que no, aquí ha habido varios abogados. Nosotros nos entregaron el expediente, por eso es por lo que cuando él declara y se le confronta con la minuta dice: "Yo me enteré cuando mi abogado me dio el expediente". *Íd.*, pág. 379.

**su ausencia.**[18] **El señor Marrero Martínez le inquirió que ella no estaba cualificada para la plaza, a lo que esta respondió que la adiestrara de todos modos.**[19] **Una vez el señor Marrero Martínez regresó de su licencia médico familiar, la señora Sánchez Cruz continuó efectuando labores en el puesto de Pre Interventor I, aun cuando no contaba con la preparación académica.** Tanto la señora Sánchez Cruz como la Directora de Recursos Humanos son simpatizantes del Partido Popular Democrático.[20]

Culminado el período bajo licencia medicó familiar, el señor Marrero Martínez se reincorporó a sus labores el 30 de enero de 2017. Entre tanto, **el 13 de febrero de 2017**, la Oficina del Contralor de Puerto Rico, emitió el Informe de Auditoría Núm. M-17-24. En síntesis, concluyó que el Municipio se había apartado de las normativas y las disposiciones legales y había incumplido sus deberes al promover un nombramiento transitorio de Pre Interventor I, existiendo la necesidad de servicio por tanto tiempo sin cumplir los requisitos para un nombramiento en propiedad, que no permitía una administración adecuada de personal municipal.[21] En resumen, de los hallazgos producidos por el Informe de la Oficina del Contralor de Puerto Rico, se desprende:

> **Hallazgo 7 - Empleado nombrado como recaudador auxiliar designado a realizar funciones de preintervención**
> a. El Municipio cuenta con la Oficina de Recaudaciones, la cual es dirigida por un recaudador oficial. Dicha Oficina cuenta, además, con nueve recaudadores auxiliares. Entre las funciones de los recaudadores auxiliares se encuentra recibir los recaudos diarios y entregarlos al Recaudador Oficial para el depósito correspondiente. Por otro lado, el Municipio también cuenta con el Área de Preintervenciones, cuyas funciones consisten en verificar que los pagos realizados en el Municipio estén a tono con las leyes y los reglamentos aplicables. Ambas áreas cuentan con sus respectivos puestos y especificaciones de clase para su funcionamiento, según el Plan de Clasificación y

---

[18] *Íd.*, pág. 508.
[19] Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señor Edgardo Marrero Martínez, pág. 70, líneas 1-24.
[20] *Íd.*, pág. 72, líneas 13-19.
[21] Anejo 21 del Recurso de Apelación, págs. 509-557.

Retribución de los Empleados de Carrera del Municipio Autónomo de Humacao (Plan); y están bajo la dirección de la Directora de Finanzas quien, a su vez, le responde al Alcalde. Por otro lado, el Alcalde tiene la responsabilidad de mantener una adecuada administración del personal. **Nuestro examen sobre dichas operaciones reveló que, en julio de 2009 y enero de 2015, los entonces directores de Finanzas le asignaron por escrito las funciones de pre-intervención a un empleado nombrado como recaudador auxiliar. En noviembre de 2011, el empleado solicitó la reclasificación de su puesto de Recaudador Auxiliar al de Oficial de Pre-intervención I, pero no fue reclasificado.** No obstante, el empleado continuó realizando las funciones de pre-Interventor de julio de 2009 a enero de 2015. Se determinó que de julio de 2009 a enero de 2015 este empleado sólo realizó funciones de pre-intervención sin ser nombrado por el Alcalde para ocupar este puesto, según lo establece el Plan. **Durante el transcurso de la auditoría, esta situación fue notificada por nuestros auditores a la Directora de Finanzas en varias ocasiones, para que se tomaran las medidas necesarias y se corrigiera la situación. No obstante, a enero de 2015, el empleado continuaba realizando las funciones de pre-Interventor y no se había reclasificado su puesto**.

**Criterios**
La situación comentada es contraria a los artículos 3.009(o), 6.003(e) y 8.010(d) de la *Ley 81-1991*; y al Capítulo III, secciones de la 3 a la 5 y Capítulo IV, Sección 8 del *Reglamento para la Administración Municipal*. Además, es contraria a las especificaciones de clases para los puestos de recaudador auxiliar y oficial de pre-intervención incluidas en el *Plan*.

**Efecto**
La situación comentada no permite una administración adecuada del personal municipal.

**Causas**
**Atribuimos la situación comentada a que el Alcalde y los directores de Finanzas y de Recursos Humanos en funciones se apartaron de las disposiciones citadas y de sus deberes.**

**Comentarios de la Gerencia**
El Alcalde indicó en su carta lo siguiente:
**El empleado nombrado en el puesto transitorio de Recaudador Auxiliar fue autorizado a ejercer las funciones de Pre-Interventor desde el 8 de julio de 2009 debido al retiro de uno de los empleados de esa área. Se consideró que al ser indefinida dicha autorización y habiendo la necesidad de cubrir el puesto en la pre-intervención de documentos, no sería necesario extenderlo al vencimiento de cada periodo transitorio. No obstante, las últimas extensiones de su nombramiento transitorio están acompañadas con la delegación para ejercer las funciones de Pre-intervención**. [sic]

Véanse las recomendaciones 2, 13.c., 14 y 20.[22] (Énfasis suplido y subrayado nuestro).

Empero, posterior al hallazgo de la Oficina del Contralor sobre el nombramiento de la parte apelada, el Municipio por conducto de la Directora de Recursos Humanos, en ese entonces la señora Castro Cosme, preparó una carta fechada del **14 de febrero de 2017,** dirigida al señor Marrero Martínez, donde indicó que se le extendería el contrato laboral hasta el **30 de abril de 2017**, fecha en que sería separado permanentemente de su empleo. Esta carta fue entregada a la parte apelada a mitad de marzo de 2017, aunque contaba con fecha de febrero.

Posteriormente, el señor Marrero Martínez cesó sus labores con el Municipio el 30 de abril de 2017.[23] El señor Marrero Martínez no obtuvo la renovación de su contrato del puesto de Recaudador Auxiliar con funciones extendidas de Pre Interventor I, toda vez que, el Municipio entendió que no cumplía con los requisitos del puesto de Pre Interventor I. Después de la salida de la parte apelada, la señora Sánchez Cruz fue nombrada al puesto de Pre Interventor I sin cumplir con los requisitos de la plaza que le fueron exigidos a la parte apelada.

Ante esta situación, el señor Marrero Martínez demandó al Municipio por discrimen por ideología política y sexo, y represalias en el empleo al palio de la Ley Núm. 115-1991.[24] Según la prueba vertida en juicio, al igual que los testimonios de las partes, el foro de origen dictó *Sentencia* declarando *Con Lugar* la acción de discrimen por razón de ideas y filiación política y le concedió una suma de $13,524.00. De igual forma, declaró *Con Lugar* la acción de represalias en el empleo al amparo de la Ley Núm. 115-1991,

---

[22] Anejo 21 del Recurso de Apelación, págs. 533-535.
[23] *Íd.*, pág. 208.
[24] Anejo 4 del Recurso de Apelación, págs. 47-52.

concediéndole una suma de $114,720.00 al igual que los honorarios a razón de 25% de las sumas adjudicadas a su representante legal, y los intereses por las sumas concedidas a razón de un 4.5% anual. El Municipio presentó *Moción solicitando Reconsideración* la cual fue declarada *No Ha Lugar*.[25]

Inconforme con el dictamen del Tribunal de Primera Instancia, la parte apelante presentó el recurso ante nos y le imputó al foro primario la comisión de los siguientes señalamientos de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE HUMACAO AL ACOGER LA DEMANDA POR RAZÓN DE IDEAS Y FILIACIÓN POLÍTICA PRESENTADA POR EDGARDO LUIS MARRERO MARTÍNEZ.

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE HUMACAO AL DETERMINAR QUE EL MUNICPIO DE HUMACAO INCURRIÓ EN REPRESALIAS SIN PRUEBA ALGUNA QUE SOSTENGA DICHA DETERMINACIÓN.

Examinado el recurso en su totalidad y con la comparecencia de ambas partes, procedemos a establecer el derecho aplicable.

## -II-

## -A-

Es norma reiterada que los Tribunales Apelativos no debemos intervenir con la apreciación de la prueba que realizan los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846 (2023); *WMM, PFM et al. v. Colegio et al.*, 211 DPR 871,903 (2023); *Super Asphalt. v. AFI y otro,* 206 DPR 803, 820 (2021)*; Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 784 (2020).

En ese contexto, recientemente enfatizamos que un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello,* 155 DPR 62, 79 (2001). Pero, si la apreciación de la prueba no representa el balance más racional, justiciero y jurídico de la totalidad de la

---

[25] Anejo 3 del Recurso de Apelación, págs. 39-46.

prueba, cuando la evaluación se distancie de la realidad fáctica o esta es inherentemente imposible o increíble tenemos la responsabilidad ineludible de intervenir. Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, no exista base suficiente que apoye su determinación. *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 220 (2021).

Por otro lado, el Tribunal de Apelaciones no debe elaborar sobre la pasión, el prejuicio y la parcialidad si no puede fundamentar que esto ocurrió en el caso ante su consideración. Quien señale que el juzgador actuó mediando pasión, prejuicio o parcialidad debe sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia. *Gómez Márquez et al. v. El Oriental, supra,* pág. 785.

### -B-

La Ley Núm. 115-1991, 29 LPRA sec. 194, también conocida como la "Ley de Represalias contra el Empleado por Ofrecer Testimonio", se aprobó con el propósito de proteger a los trabajadores contra potenciales represalias por parte de los patronos, motivadas por el ofrecimiento de algún testimonio o alguna información ante ciertos foros. *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 668-669 (2017). Particularmente, el Artículo 2(a) de la precitada legislación establece que:

> Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando

dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. Artículo 2 (a), Ley Núm. 115-1991, según enmendada, 29 LPRA sec. 194b(a)

La prohibición se extiende al testimonio, expresión o información que el empleado ofrezca o intente ofrecer en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad. No obstante, las expresiones cobijadas no pueden ser difamatorias ni sobre información privilegiada protegida por ley. Quien alegue la protección de ley, puede instar su reclamación en un término de tres años desde que ocurrió la violación. Además de solicitar una compensación por los daños sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, los beneficios y honorarios de abogado. Si la reclamación prospera, el patrono tendrá que pagar el doble de la compensación por los daños y salarios dejados de devengar. Artículo 2, 29 LPRA sec. 194b(a).

### -C-

El Tribunal Supremo de Puerto Rico ha preservado la garantía constitucional establecida en nuestra Carta Magna, donde se establece la protección contra discrímenes por motivos de ideas políticas. Art. II, Sec. 1 de la Constitución de Puerto Rico, LPRA, Tomo 1. El más alto foro judicial de Puerto Rico ha extendido esta protección constitucional para empleados permanentes o irregulares, empleados transitorios y de confianza. *Abrams Rivera v. ELA,* 178 DPR 914, 935-36 (2010); *Báez Cancel v. Alcalde Mun. de Guaynabo,* 100 DPR 982, 987 (1972). En adición a lo anterior, el Tribunal Supremo de Puerto Rico ha señalado que "los empleados transitorios gozan de una expectativa de retención de empleo durante el término de su nombramiento, más no cuando éste ha vencido". *SLG Giovanetti v. ELA,* 161 DPR 492, 510 (2004).

Bajo este prisma normativo, el máximo foro judicial de Puerto Rico ha establecido que:

El demandante tiene dos vías para probar su caso de discrimen político: (1) probando el discrimen o (2) valiéndose de la presunción a su favor al establecer un caso *prima facie.* Esta presunción está gobernada por las reglas de evidencia que, en una acción civil, imponen a la parte contra la cual se establece la presunción, la carga de demostrar la inexistencia del hecho presumido. **Esta presunción de discrimen político aplica cuando se establecen los hechos siguientes**: "(**1) ausencia de un motivo racional que justifique el despido y (2) la sustitución del empleado por otro de diferente afiliación política que resulte afín con la de la autoridad nominadora**". (citas omitidas). El demandante tiene que aportar prueba para establecer estos hechos para que la presunción opere a su favor y el demandado esté obligado a ofrecer prueba conducente a "demostrar la no existencia de los hechos básicos y, en consecuencia, la del hecho presumido". (citas omitidas). Sólo si el demandado puede cumplir con esta segunda etapa probatoria, en su modalidad de ausencia de discrimen, es que el demandante está obligado a presentar prueba de que su despido fue motivado por sus creencias políticas. *Abrams Rivera v. ELA, supra,* pág. 937. *Báez Cancel v. Alcalde Mun. de Guaynabo, supra,* pág. 990. (Énfasis y subrayado nuestro).

Además, "un empleado transitorio sólo tendrá un remedio ante los tribunales por un reclamo de despido por discrimen político si las razones por las cuales fue despedido *son exclusivamente políticas". SLG Giovanetti v. ELA, supra,* pág. 517. (Bastardillas en el original).

**Es decir, si la agencia nominadora puede demostrar, mediante preponderancia de la prueba, que el contrato no se renovó por otras razones, entonces no cabe hablar de un remedio por discrimen político**. *Aponte Burgos v. Aponte Silva,* 154 DPR 117, 136 (2001); (Énfasis suplido). Estas razones pueden ser: **(i) *la falta de fondos*; (ii) el desempeño inadecuado del empleado en cuanto a sus funciones se refiere, o (iii) cualquier otra razón justificada**. *SLG Giovanetti v. ELA, supra,* pág. 517. (Énfasis suplido).

**-III-**

La parte apelante acude ante este Tribunal solicitando que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia por no estar conforme con la determinación del foro primario. En esencia, aduce que no existió ningún tipo de discrimen por razón de ideas y filiación políticas, y que tampoco incurrió en represalias contra el señor Marrero Martínez. *No le asiste la razón.* Por estar intrínsecamente atados, procederemos a discutir ambos errores en conjunto.

El Municipio intenta justificar la "no renovación del contrato" aludiendo que el señor Marrero Martínez no cumplía con los requisitos del puesto de Pre Interventor I. Adviértase, que la parte apelada sí cumplía con los requisitos al puesto que él estaba nombrado, que era el de Recaudador Auxiliar y al que se le renovó en múltiples ocasiones un contrato con funciones delegadas de Pre Interventor I. Sin embargo, el Municipio no tomó esto en consideración, ni le dio la oportunidad de "capacitarse" para un requisito que **no estaba en la descripción del puesto de Pre Interventor I**, a saber: "graduación de Escuela Superior acreditada que incluya *o* esté suplementada por un curso de teneduría de libros *o* tres (3) créditos a nivel universitario de una entidad educativa acreditada. Se requieren dos (2) años de experiencia en trabajos de finanzas o contabilidad".[26]

Por el contrario, la Directora de Recursos Humanos le inquirió al señor Marrero Martínez a tomar los antedichos créditos, la parte apelada hizo la gestión y se matriculó tal como fue solicitado, aun teniendo un grado de Bachillerato. Toda vez que, la Directora de Recursos Humanos insistió con referencia a los créditos

---

[26]Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señor Edgardo Marrero Martínez, pág. 33, líneas 10-26; Anejo 35 del Recurso de Apelación, págs. 735-737.

universitarios "se sobreentendía que eran en contabilidad", aunque no era el lenguaje textual y expreso de los requisitos.[27] La Directora de Recursos Humanos ignoró la disposición de que la plaza antes citada contiene una conjunción coordinante que tiene un valor disyuntivo cuando expresa alternativas entre distintas opciones.[28] En este caso, era el bachillerato **o** en la alternativa los créditos de curso de teneduría de libros, el señor Marrero Martínez cumplía con el grado de bachillerato. **No obstante, no le renuevan el contrato y posteriormente el Municipio, aun cuando la propuesta causa de la cesantía era el incumplimiento de los requisitos del puesto, nombró a una empleada con menor preparación, que, no cumplía con los requisitos porque no tenía un bachillerato ni contaba con los tres (3) créditos de teneduría de libros.** Es decir, su perfil educativo consistía en un grado de cuarto año de escuela superior, y su puesto era auxiliar de sistema de información.[29]

Nótese que, la jurisprudencia ha establecido que para que se configure una causa de acción ante un discrimen político, es necesario que se demuestre "(1) ausencia de un motivo racional que justifique el despido y (2) la sustitución del empleado por otro de diferente afiliación política que resulte afín con la de la autoridad nominadora". *Abrams Rivera v. ELA, supra,* pág. 937. Del expediente ante nos, se desprende claramente como primer elemento (1) la ausencia de un motivo racional que justificara no renovarle el contrato del señor Marrero Martínez. La parte apelada nunca tuvo ningún señalamiento negativo en su desempeño. Por otro lado, se configura el segundo (2) elemento para que prospere la causa de acción ante un discrimen político con la sustitución de su persona,

---

[27] Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señora Maribel Castro Cosme, pág. 451, líneas 24-25;

[28] Diccionario Real Academia Española, https://www.rae.es/dpd/o, (Última visita el 9 de octubre de 2024).

[29] Transcripción Prueba Oral Estipulada, 23 de marzo de 2023, Testigo señora Ivette Díaz Vélez, pág. 310, líneas 1-25; pág. 310, líneas 1-25.

por la empleada Sánchez Cruz, **quien era partidaria de la autoridad nominadora**, **y que al momento de los hechos no cumplía con los requisitos mínimos de plaza de Pre Interventor I.** Tal asunto fue abordado en la Deposición del señor Marrero Martínez, donde a preguntas del representante legal se desprende:

> R: Pero entonces, ¿Qué sucede en este caso? Pues, una persona... **"Yari" si, es de las que hace. [30] Campaña, de las que camina con el Alcalde y todo.**
> La familia, la mamá, los hermanos, todos, todos.
> Eso es como si fuera una tradición ¿ve?.
> Inclusive, en ese, en ese ambiente, en ese ambiente que hay ahí de finanzas, yo creo que el único PNP que era yo.
> P: ¿Usted cree?
> R: Pues, es que todos los que yo veía eran...
> P: Pero usted, con certeza no sabe eso.
> R: Si. No lo se. Pero yo se que yo, yo soy del partido contrario a ella. **Pero si, "Yari" si, es del partido... afiliada al Partido Popular. Y de las que marcha, camina**.[31]

Dicha información fue reiterada en el Juicio en su fondo a preguntas del representante legal:

> P: Oiga, usted dice a preguntas que yo le hice hace un rato que todo el mundo sabía su afiliación política allí.
> R: Partido Nuevo Progresista.
> P: Ajá. Le pregunto, ¿qué conocimiento tenía usted de la afiliación política de Marilyn Cruz y de Yaritza Sánchez? Vamos con Marilyn Cruz.
> R: Partido Popular Democrático.
> P: **¿Y qué conocimiento tiene usted de la afiliación política de Yaritza Sánchez?**
> **R: También, Popular.**
> P: **¿Y por qué usted sabe que eran Populares?**
> R: **Porque abiertamente se sabía y hacían campañas y estaban en actividades del Partido Popular Democrático. Eso se, eso todo el mundo lo sabe.[32]**

Por otro lado, sobre el testimonio de la parte apelada, sobre su afiliación o preferencia política surge que:

> P: ... de Humacao. Yo le pregunto, ¿quién en el Municipio de Humacao conocía de su afiliación política?
> R: Bueno prácticamente, todo el mundo, todos los compañeros allí. Porque me vieron, sabían que yo trabajé con el Alcalde PNP de, del pueblo de Maunabo.

---

[30] Anejo 21 del Recurso de Apelación, págs. 398 Deposición del señor Marrero Martínez, fecha 6 de septiembre de 2019, pág.101 líneas 24-25.

[31] *Íd.*, págs. 399. Deposición del señor Marrero Martínez, fecha 6 de septiembre de 2019, pág.101 líneas 1-13.

[32] Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señor Marrero Martínez, pág. 72, líneas 6-19.

Y me vieron en actividades del Partido Nuevo Progresista. Pues, y yo, pues no cooperaba ni asistía en las actividades del Partido Popular aquí en Humacao.

P: ¿Qué no cooperaba ni asistía?

R: No asistía en nada de las actividades del Partido Popular porque yo era Partido Nuevo Progresista. Y muchas de mis, de las actividades del Partido PNP, pues muchos compañeros me vieron y eso era, pues, conocimiento de todo el mundo, que yo era del Partido Nuevo Progresista.[33]

.          .          .          .          .          .          .          .

A preguntas nuevamente del representante legal, la parte apelada contestó:

P: Sí. Señor Marrero, casi al final, y yo diría que casi a las 12:30, le preguntaron a usted, la representación legal del municipio, que si usted, que, que le dijera si era o no cierto que usted había fungido como observador del candidato Marcelo Trujillo, como observador, a unas primarias que se celebraron según la pregunta en el 2016. Y usted contestó que sí. Usted admitió eso.

R: Sí.

P: ¿Recuerda eso?

R: Sí.

P: Okay. ¿Por qué usted siendo PNP participó como [34] obser. . .? Primero, ante. . . antes que nada, dígame qué es eso de observador. ¿Cuál era la función?

R: Mi posición era estar, eh, en, en, co. controlando la fila...

P: ¿En dónde?

R: En el salón de, de donde se iba a votar.

P: ¿En un salón?

R: Sí.

P: ¿Y usted estaba adentro o fuera?

R: No. Estaba en la puerta. Yo estaba en la puerta.

P: En la puerta.

R: Unjú.

P: ¿Y eso es lo que, lo que usted entendió por observador cuando él le preguntó?

R: Sí.

P: Entonces, ¿por qué siendo usted PNP accedió a, a ser observador en una primaria del Alcalde de Trujillo?

R: Lo que pasa es que para ese entonces pues Marcelo Trujillo y Raúl Quiñones, el Sr. Raúl Quiñones, se me acercaron para que le haga el favor porque faltaba una...

P: Está bien. ¿Pero se le acercan para que le haga el favor porque faltaba qué usted dice?

R Faltaba una persona para que haya quórum para que en ese salón pues haya representante, ¿verdad? Entonces, pues, pues yo accedí.

P: ¿Pero por qué accedió?[35]

---

[33] *Íd.*, Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señora Maribel Castro Cosme, pág. 451, líneas 24-25.

[34] Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señor Marrero Martínez, pág. 172, líneas 15-25;

[35] *Íd.*, pág. 173, líneas 1-25.

R: Porque se me... porque me sentí como, como obligado. Me sentí obligado a que yo, a que yo ejerciera lo que, lo que ellos me estaban pidiendo.

P: ¿Y por qué se sintió obligado?

R: **Porque tenía mie... eh, sentí temor de que tomaran represalias conmigo.**

P: Okay. **Este, la última pregunta que le hacen es si usted había dicho en la deposición que usted también tuvo una, que habló con los auditores del Contralor poco antes del despido en el 2017.**

**R: Si.** [36]

.          .          .          .          .          .          .          .

P: Lo cierto es que usted solo contestó preguntas que le hicieron los, los propios auditores del Contralor. ¿Cierto?

R: Sí.

P: El audi... eh, uste... eh, el audito... el auditor del Contralor fue donde usted. ¿Cierto?

R: Sí.

P: Usted no fue donde el auditor.

R: No.[37]

Señalamos, además, que el Foro de Origen destacó en la *Sentencia* apelada, que no le dio ningún tipo de credibilidad al testimonio de las empleadas que testificaron en el Juicio en su Fondo, sobre el desconocimiento de que el señor Marrero Martínez profesaba una ideología política distinta.[38]

Ciertamente, el Municipio decidió no renovarle el contrato que por más de nueve (9) años el señor Marrero Martínez hizo. Nótese, que estas auditorías se produjeron entre los años 2009 al 2016, durante ese período de tiempo nunca se le había exigido el requisito de crédito en contabilidad para desempeñar el puesto de Pre Interventor I. No es hasta que se reitera dicho hallazgo en el informe, del cual el señor Marrero Martínez dio testimonio sobre su puesto de empleo, y donde el Informe del Contralor señala la deficiencia y violación de la administración municipal a las recomendaciones del Informe del Contralor, que el Municipio decide tomar acción. Sin embargo, en vez de nombrar al empleado como fue sugerido por el Informe específicamente, decide no renovarle su contrato transitorio

---

[36] *Íd.*, pág. 174, líneas 1-10.
[37] *Íd.*, pág. 142, líneas 13-21.
[38] Anejo 2 del Recurso de Apelación, pág. 28.

y separarlo permanentemente. **Además, nombró a una empleada transitoria identificada con el partido político afín con la administración municipal, que tampoco cumplía con las exigencias que le hicieron al señor Marrero Martínez.**

Luego de una lectura serena de la documentación ante nos, así como la Transcripción Oral del Juicio en su Fondo, colegimos que el Municipio incurrió en discrimen político contra la parte apelada, ya que no hubo motivo racional para no renovar su contrato, y al sustituirlo por una empleada de diferente afiliación política que, resultaba afín con la de la autoridad nominadora.

Por otro lado, los requisitos que deben cumplirse para configurar una causa de acción por represalias son claros y específicos. Es decir:

> **Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico,** así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. Artículo 2 (a), Ley Núm. 115-1991, según enmendada, 29 LPRA sec. 194b(a). (Énfasis suplido).

No nos cabe duda de que la participación de una actividad protegida al amparo de la Ley Núm. 115-1991, cuando el señor Marrero Martínez testificó en la auditoria que concluyó en el Informe de Auditoría Núm. M-17-24. de la Oficina del Contralor de Puerto Rico, movieron los ánimos del Municipio y la Directora de Recursos Humanos a tomar acción contra su nombramiento, en efecto, una acción adversa a la recomendación que se desprendía del Informe del Contralor. Como cuestión de hecho, al señor Marrero Martínez

nunca le requirieron los créditos de contabilidad para mantenerse en la plaza de Pre Interventor I, hasta que surge la Investigación y se desarrolla posteriormente el Informe del Contralor.[39] Más aun, nunca le contestaron las cartas que el mismo suscribió para que lo nombraran en propiedad, aun existiendo la necesidad de servicio, que él ocupaba. Es decir, la necesidad de servicio continuó, el señalamiento fue notificado en el Informe del Contralor, donde la parte apelada testificó **a requerimiento de la entidad**. Posteriormente lo ocupó su sustituta, de manera transitoria y tampoco cumplía con las exigencias que le hicieron al señor Marrero Martínez.

Es por ello, que resulta forzoso concluir que la parte apelada probó mediante evidencia directa el discrimen político y que se incurrió en conducta de represalias en su contra, estableció el nexo causal, es decir la participación de una actividad protegida donde probó el daño sufrido, lo que concluyó con su despido y haber sido sustituido por una empleada identificada con la autoridad nominadora. *No se cometieron los errores señalados.*

### -IV-

Por los fundamentos antes expuestos, *confirmamos la Sentencia apelada.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[39] Transcripción Prueba Oral Estipulada, 21 de marzo de 2023, Testigo señor Marrero Martínez, pág. pág. 142, líneas 13-21.